W. E. DENNY, Appellant, v. THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellee.

**Railroads:** PASSENGERS: TRESPASSERS: REQUIRED CARE. A railway passenger riding upon a pass deceptively obtained and used with knowledge of the deception is a trespasser, to whom the railway company is only required to refrain from wilful or wanton injury.

**Same:** GROSS NEGLIGENCE: EVIDENCE. Proof that a trespasser upon a railroad train was injured in a collision caused by a misplaced switch establishes simply ordinary negligence; and not a wilful, wanton or reckless injury for which the railway company was liable.

*Appeal from Johnson District Court.*—HON. R. P. HOWELL, Judge.

WEDNESDAY, MARCH 15, 1911.

ACTION at law to recover damages for personal injury suffered by plaintiff's minor daughter. There was

a directed judgment and verdict for defendant. Plaintiff appeals.—*Affirmed.*

*Wade, Dutcher & Davis,* for appellant.

*Carroll Wright, J. L. Parrish,* and *H. G. Walker,* for appellee.

WEAVER, J.—At the time of the injury in question, Ruth Denny was a girl about fifteen years of age. In August of 1907 she was living at Cedar Rapids in this state, but was contemplating a visit to St. Louis, Mo. She was acquainted with one E. W. Penny, who was then an employee of the defendant railway company. On learning of Miss Denny's proposed trip, he undertook to assist her by procuring a pass for her over defendant's line as far as Peoria, Ill., and return. This he accomplished by representing to the company that the person who was to use the transportation was his sister. The pass was made out to "Ruth Penny," instead of the girl's true name, Ruth Denny, and she was therein described as the sister of the employee. This pass was honored by defendant on the outgoing trip from Cedar Rapids to Peoria. Returning from St. Louis, the girl boarded defendant's train at Peoria for the completion of her journey home. She purchased no ticket, but relied upon the return coupon of said pass as the voucher or authority for such transportation. At Rock Island, through the mistake or negligence of an employee of the company in misplacing a switch, a freight train moving through the yards was brought into collision with the passenger train on which the young lady was riding, and in the crash thus occasioned she was severely injured. It is for the injuries so sustained the father seeks a recovery of damages in this action.

At the close of the testimony on part of the plaintiff,

defendant moved for a directed verdict in its favor on grounds which may be stated as follows: (1) It is admitted that plaintiff's daughter was a trespasser who had obtained access to the train by fraud and deceit, and the relation of passenger and carrier did not arise between the parties. (2) That there is no evidence to show negligence or failure of duty on the part of the company with respect to the said Ruth Denny. Still other grounds are assigned; but we shall have no occasion to consider them. The motion was sustained, and from the judgment for the defendant upon the directed verdict this appeal has been prosecuted.

If we correctly interpret the position taken by appellant's counsel, they do not question the general rule that one who by fraud and false representations gains access to a railway car for the purpose of obtaining carriage or transportation without paying therefor is, in the legal acceptance of the term, a trespasser, and as such is not entitled to the same protection which a passenger may demand at the hands of a carrier. It is said, however, that one who, being supplied with a void or insufficient ticket, takes passage upon a car believing in good faith that he is entitled to ride, is at most a merely technical trespasser, and is entitled to a reasonable degree of care and protection by the carrier, and that in no event can such carrier knowingly, wantonly, or recklessly kill or injure one who is riding upon its train, and then be heard to excuse such wrong by saying that the injured person was a trespasser. Numerous cases are called to our attention and discussed by counsel on both sides. The subject is an interesting one, and cases can easily be imagined where an extreme application of the rule of liability on one hand or nonliability on the other would produce grossly unjust results. But, assuming for our present purposes the entire correctness of the main propositions

1. RAILROADS: passengers: trespassers: required care.

of law advanced in support of the appeal, we think it very clear that the record fails to make a case against the defendant. Counsel say that Miss Denny "was not a trespasser in the ordinary sense of the term. She was riding on the train, riding in good faith but technically upon an illegal contract." The statement does not fairly reflect the testimony. The young lady was not a mere thoughtless child. She was not herself deceived as to the nature of the transaction. She knew that she had been falsely_ represented to the company as the sister of the employee Penny, and thereby the pass had been procured. To carry out the deception and secure the passage to Peoria and return, she assumed and used the name written upon the pass. When taken to the hospital after her injury, she gave the name on the pass as her own, and later when Penny came to the hospital to see her she introduced him to others as her brother. Of this incident she says: "I did it on account of having this pass that wasn't intended for me. I knew the pass wasn't intended for me, and that I didn't have any right to ride on it." She was not therefore one who boards a train in good faith and rides thereon in the honest belief that she may rightfully do so. We need not stop to consider to what extent, if at all, her conduct indicates moral obliquity. It is sufficient that she knew the pass had been procured by fraud and concedes that she used it in fraud. She was clearly and admittedly a conscious trespasser, and as such, even upon counsel's own statement of the law, plaintiff was entitled to go to the jury only upon the theory that the evidence would justify the jury in finding defendant guilty of "recklessness, wilfulness, wantonness, and gross negligence." Such a case is not made.

The statement in appellant's brief that the evidence was such as to entitle him "to go to the jury as to whether or not the employee of the company did not wilfully and intentionally produce. a collision there that night"

finds its justification in the heat of debate rather than in the cold unimaginative record. The collision of the trains was not of unusual or remarkable character. It would perhaps not be an extreme statement to say that its happening was of itself evidence of negligence as to one occupying the relation of passenger; but there is an utter lack of circumstances to justify the conclusion that the act or omission which brought it about was wanton, wilful, or intentional. So long as men are human they will make mistakes and at times be guilty of carelessness. Few, however, are so base or so lacking in decent regard for human life as to wilfully or wantonly do or omit an act of duty by which death or disaster to others may reasonably be expected to follow, and, in the absence of other facts pointing to such conclusion, neither court nor jury should, from the mere fact that an injury has been negligently occasioned, assume to characterize the conduct of the negligent person as wilful or wanton. Accidents from misplaced switches have at times marked the history of railroading from its beginning. It is scarcely to be expected that the time will ever come when they will be wholly unknown. The responsibility justly attaching to a railway company for the unfortunate result of such mishaps is sufficiently heavy without imposing on it or its employees any presumption of intentional or wilful wrong, nor should such finding be indulged or allowed save upon evidence more tangible than mere conjecture. Without taking time to detail the stories told by the several witnesses, we have to say they disclose nothing whatever on which a finding that any employee who was in any manner responsible for this collision was actuated by malice or wilfulness or wantonness could be sustained by the court.

2 SAME: gross negligence: evidence.

Counsel make frequent use of the phrase "gross negligence" in their discussion of this case. In this state, as is well known, the actionable character of negligence is

not dependent upon its "degree," and the ancient differentiation into "gross," "ordinary," and "slight" has come to mean little more than a matter of comparative emphasis in the discussion of testimony. Nowhere in our own cases is any rule announced to the effect that "gross negligence" on the part of the carrier. is sufficient ground for an action by a trespasser. injured in course of transportation fraudulently procured. It has frequently been said that when the presence of the trespasser is known to the company or its employees, or when the circumstances are such that we may reasonably infer such knowledge, it owes him the duty not to run him down or otherwise wantonly or recklessly injure him; that this rule is open to some breadth of construction according to the circumstances calling for. its application may be admitted. It may be conceded that the railway company through its conductor knew the girl was on the train. It did not know, nor is there evidence, that any of its employees knew of the peril to which she was exposed in time to avoid a collision or to remove her to a place of safety.

There was no tenable theory on which to submit the issues to a jury, and the court properly directed a verdict. —*Affirmed.*