Michael W. UNERTL; Deborah J. Unertl; Marvin G. Sutton, Sr.; Norma J. Sutton; and Bernard W. Gross, On Behalf of Themselves and All Those Similarly Situated, Appellants,

v.

Peter F. BEZANSON, Individually and in His Capacity as a Director and Chairman of the Board of Directors of The Morris Plan Company of Iowa; John D. Wolfe, Individually and in His Capacity as President of the Morris Plan Company of Iowa; and Robert L. McGannon, Jerry S. Maples, Melvin Struthers, Jr., Irene B. Konecny, Robert E. Johnson, John H. Vaughn, and Loras J. Kregel, All Individually and in Their Capacity as Members of the Board of Directors of The Morris Plan Company of Iowa; Peter F. Bezanson, Individually and in His Capacity as a Director and Chairman of the Board of Directors of The Morris Plan Company; Jerry S. Maples, Individually and in His Capacity as the President and a Member of the Board of Directors of The Morris Plan Company; Robert L. McGannon, Individually and in His Capacity as an Officer and Member of the Board of Directors of The Morris Plan Company; Randall P. Bezanson, Kenneth Hastie, John J. Bryant, Allan C. Peremsky, Robert E. Johnson and John D. Wolfe, Individually and in Their Capacity as Members of the Board of Directors of The Morris Plan Company; and the Morris Plan Company, An Iowa Corporation; and Peter F. Bezanson, Individually and in His Capacity as a Director and Chairman of the Board of Directors of MorAmerica Financial Corporation; Jerry S. Maples, Individually and in His Capacity as President and a Member of the Board of Directors of MorAmerica Financial Corporation; Larry Kroemer, Individually and in His Capacity as an Officer and a Member of the Board of Directors of MorAmerica Financial Corporation; and Randall P. Bezanson and Robert L. McGannon, Individually and in Their Capacity as Members of the Board of Directors of MorAmerica Financial Corporation; and an Unknown Number of Jane Does and John Does, Hereinafter More Particularly Identified, Individually and in Their Capacities as Officers and/or Directors of The Morris Plan Company of Iowa, The Morris Plan Company or MorAmerica Financial Corporation, Appellees.

No. 86–1171.

Supreme Court of Iowa.

Oct. 21, 1987.

James W. Hall and Joe H. Harris of Hall & Irvine, Cedar Rapids, for appellants.

Carl Schuettpelz, Cedar Rapids, for appellee Morris Plan Co.

Michael Helms, Omaha, Neb., and Minor Barnes of Pickens, Barnes & Abernathy, Cedar Rapids, for all other appellees.

LARSON, Justice.

These plaintiffs lost the savings they had deposited with a corporation called Morris Plan Company of Iowa (hereafter Morris Plan of Iowa), an "industrial loan company" under Iowa Code chapter 536A. The plaintiffs claim the loss was largely the

result of imprudent loans made by Morris Plan of Iowa to two related corporations, Morris Plan Company and MorAmerica Financial Corporation (hereafter MorAmerica). The plaintiffs sued the Morris Plan Company and its officers and directors, as well as the officers and directors of Morris Plan of Iowa and MorAmerica. (Apparently, because Morris Plan of Iowa and MorAmerica had filed for reorganization under the bankruptcy laws, those corporations were not joined as defendants.)

The district court dismissed the petition on two grounds: (1) it failed to state a claim on which any relief could be granted, Iowa R.Civ.P. 104(b); and (2) the bankruptcy proceedings by MorAmerica and Morris Plan of Iowa automatically stayed further proceedings in state court. The plaintiffs appealed, and we now affirm. Because we affirm on the first issue, we do not address the second.

The petition first identifies the five named plaintiffs as "depositors" of Morris Plan of Iowa and states that there are common interests of all other depositors (alleged to exceed 15,000 in number, and representing over $50,000,000 in deposits), in order to obtain certification as a class action under Iowa Rule of Civil Procedure 42.1. The district court reserved ruling on the certification request, and that matter is not involved in this appeal.

The petition alleged that MorAmerica is a financial holding company and that all of its outstanding stock is owned by defendant Peter F. Bezanson. Morris Plan Company is a wholly owned subsidiary of MorAmerica. The third corporation, Morris Plan of Iowa, is an Iowa corporation which is a wholly owned subsidiary of Morris Plan Company. The officers and directors of the three corporations are highly interlocked, and it is alleged that virtually all of the ownership of the three corporations is in defendant Peter F. Bezanson.

It is alleged that, as an industrial loan company, Morris Plan of Iowa "is engaged in the business of receiving deposits upon which it pays interest, and making loans for which it charges interest." It is only this corporation, Morris Plan of Iowa, with

which the plaintiffs had direct dealings through the investment of their savings. The plaintiffs' claims against the other defendants arise as a result of the loans made by Morris Plan of Iowa to them.

The petition alleges that, over a period of time prior to the filing of the bankruptcy proceedings by MorAmerica and Morris Plan of Iowa, the officers and directors of Morris Plan of Iowa dissipated the corporation's assets, including the plaintiffs' deposits, by making "imprudent, unsecured" loans in the approximate amount of $50,000,000 to Morris Plan Company. They allege that Morris Plan Company, in turn, made imprudent and unsecured loans of approximately the same amount to MorAmerica and other affiliated corporations and entities in such a way as to amount to self-dealing. It further alleged that MorAmerica and Morris Plan of Iowa had filed for reorganization under chapter 11 of the federal bankruptcy law. (Morris Plan Company was apparently only a conduit for the transfer of money and had no assets of its own. The plaintiffs suggest this is the reason Morris Plan Company did not petition for reorganization.)

It is upon these facts that the plaintiffs assert claims of negligence, breach of fiduciary duty, gross negligence, and breach of implied contract. The district court held that, even if the facts alleged are considered to be true, and taken in the light most favorable to the plaintiffs, they still do not establish a legal duty to the plaintiffs on any of these bases.

I. Iowa Rule of Civil Procedure 69(a)(1) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," and rule 67 provides that "[t]he form and sufficiency of all motions and pleadings shall be ... construed and enforced to secure a just, speedy and inexpensive determination of all controversies on their merits."

We have discussed the effect of these rules on the summary dismissal of plaintiffs' claims in several of our recent cases. *See, e.g., Lakota Consol. Indep. School v. Buffalo Center/Rake Community Schools,* 334 N.W.2d 704, 708 (Iowa 1983);

*Van Meter v. Van Meter,* 328 N.W.2d 497, 497 (Iowa 1983); *Soike v. Evan Matthews and Co.,* 302 N.W.2d 841, 842 (Iowa 1981); *Lamantia v. Sojka,* 298 N.W.2d 245, 247–48 (Iowa 1980).

In *Soike,* we said that a petition

[is] not required to identify a specific legal theory; it is sufficient if the prima facie elements of a claim are stated, and this statement is "fair notice" to the defendant. . . . Under such "notice pleading," Iowa R.Civ.P. 69(a), it is sufficient if the petition apprises a defendant of the incident giving rise to the claim and of the general nature of the action. *Id.* The petition here was sufficient to apprise the defendant of the facts out of which the claim arose and of the general nature of the action, *i.e.,* a claim for negligent placement of the house. To require the plaintiffs to go further and identify the specific legal theory underlying the claim would be inconsistent with the notice pleading concept in rule 69(a), requiring only "a short and plain statement of the claim showing that the pleader is entitled to relief."

302 N.W.2d at 842 (citations omitted). In addition, the allegations of the petition are construed in the light most favorable to the plaintiff, who is given the benefit of all doubts in the petition. *Curtis v. Board of Supervisors,* 270 N.W.2d 447, 448 (Iowa 1978).

The impact of this philosophy of pleading has virtually emasculated the motion to dismiss for failure to state a claim. For such a motion to be sustained, it must be concluded that no state of facts is conceivable under which the plaintiff might show a right of recovery. *Schmidt v. Wilkinson,* 340 N.W.2d 282, 284 (Iowa 1983); *Lakota Consol. Indep. School,* 334 N.W.2d at 708; *Citizens for Washington Square v. City of Davenport,* 277 N.W.2d 882, 885 (Iowa 1979). *See generally* 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1215, at 113 (1969) (discussing similar federal rules).

Despite these liberal rules of pleading, however, it is clear they cannot create a duty where one does not otherwise exist.

*See Bawek v. Kawasaki Motors Corp.,* 313 N.W.2d 501, 502 (Iowa 1981). This is the situation in which the plaintiffs in the present case find themselves; the liberality of our pleading rules cannot overcome the fact that the plaintiffs have failed to show the existence of a legal duty owed to them.

II. As already noted, the gist of the plaintiffs' petition is that their savings had been lost through a series of imprudent investments by Morris Plan of Iowa to Morris Plan Company which, in turn, made loans to other entities. According to the petition, these loans were "imprudent" and amounted to self-dealing, because of the highly interlocked interests of the defendants in the various corporations.

A. The general rule is that

[d]irectors or officers may be liable to the corporation or stockholders for mismanagement of the business of the corporation or waste of its assets; but according to a number of cases, they are not liable to its creditors for mere mismanagement or waste of assets constituting a wrong or breach of duty to the corporation. The rule generally followed by the authorities is that a creditor of a corporation may not maintain a personal action at law against its officers or directors who have, by their mismanagement or negligence, committed a wrong against the corporation to the consequent damage of the creditor. The reason given for the rule is the entire lack of privity between the parties. There is certainly no contractual relation between them, nor any other legal relation which would raise a duty, on the part of directors or officers, to the creditor to exercise care in the management of the affairs of the corporation. The duty to exercise diligence and care is one owed to the corporation, and it is elementary law that one person cannot maintain an action against another for a wrong to a third person which injures him only incidentally. Even if an officer breaches his duty to the corporation, more than this must be shown to impose personal liability to a third person upon him.

18B Am.Jur.2d *Corporations* § 1842, at 693–94 (1985) (footnotes omitted). Our cases have been in accord. *See, e.g., Cornick v. Weir*, 212 Iowa 715, 724–28, 237 N.W. 245, 249–50 (1931); *United States Fidelity & Guaranty Co. v. Corning State Sav. Bank*, 154 Iowa 588, 591, 134 N.W. 857, 860 (1912); *Frost Mfg. Co. v. Foster*, 76 Iowa 535, 536–37, 41 N.W. 212, 212–13 (1889).

■ There is one exception to the general rule: A creditor may maintain an action for fraud, if it is alleged there was a wrong personal to the creditor and not based on the duty owed to the corporation to properly manage its affairs and assets. 18B Am. Jur.2d *Corporations* § 1842, at 695.

■ The plaintiffs do not allege there was any fraud involved or that they were deceived into depositing their money with Morris Plan of Iowa. Even when the petition is viewed in its most favorable light, it does not allege the breach of a duty owed to these plaintiffs but, rather, one owed to the corporation not to dissipate its assets. In such a case, the plaintiffs are only incidentally affected and have no direct claim against the corporation.

■ The plaintiffs concede they have not alleged fraud, but they ask that the case be reversed and remanded so that discovery may proceed, and possibly discover a basis for fraud. If we did so, however, it would amount to the upholding of a petition on the basis of a duty we do not recognize in order to allow for possible discovery of a duty we do recognize. This would stretch the liberality of our pleading rules too far.

■ B. The plaintiffs argue that the general rule of no direct duty must give way in this case because an independent duty of care has been created with respect to industrial loan companies.

Iowa Code section 536A.6 grants to the state auditor the power to supervise industrial loan companies and to promulgate rules for that purpose. The plaintiffs assert that Iowa Administrative Code section 130–1.28(5) (now found in Iowa Admin.Code 16.28(5)), adopted pursuant to that authority, creates a separate duty of care. That rule provides:

A member shall not extend credit to a subsidiary or affiliated corporation, unless the extension of credit:

1. Is commercially reasonable, and

2. Does not involve more than the normal risk of repayment, or present other unfavorable features. If a member extends credit to subsidiary or affiliated corporation(s) in excess of twenty percent (20%) of capital and surplus, such member shall on an annual and semi-annual basis provide separate reports on such corporation(s) to the superintendent and the Guaranty Corporation in such format as required by subrule 1.28(2).

In *Seeman v. Liberty Mutual Insurance Co.*, 322 N.W.2d 35, 38 (Iowa 1982), we discussed four factors to be considered in determining whether a private remedy is implicit in a statute. The plaintiffs here contend the same tests should apply in determining the effect of an administrative rule. (One of these elements involves a question of whether state or federal law is implicated. That issue is not involved in the present case, and we need not discuss it.) The three relevant questions are: (1) is the plaintiff one of the class for whose benefit the statute was enacted; (2) is there any indication of legislative intent to create or deny such a claim; and (3) is it consistent with the underlying purposes of the legislative scheme to imply such a right? *Id.*

*Seeman* involved a question of whether a private right of action was implicit in the Insurance Trade Practices Act, Iowa Code ch. 507B (1981), defining unfair methods of competition and unfair and deceptive practices in the insurance business. We held that the first test, whether the plaintiff was a member of the class intended to be protected, should be answered in the affirmative. *Seeman*, 322 N.W.2d at 41. The claim failed the second test, however, which was whether there was any indication of legislative intent to create a private remedy. We looked to the legislative purpose as explained in the Act itself:

The purpose of this chapter is to regulate trade practices in the business of insurance ... by defining, or providing for the determination of, all such practices in this state which constitute unfair methods of competition or unfair or deceptive acts or practices and by prohibiting the trade practices so defined or determined.

Iowa Code § 507B.1.

In looking for legislative intent in the present case, we note that chapter 536A was described by the legislature as

[a]n act to regulate industrial loan companies, to define and provide for the licensing of such businesses, to specify the powers of industrial loan companies, to prescribe penalties and to provide for the administration and enforcement of this Act.

61 G.A. 1965 Sess., ch. 412.

An examination of the contents of chapter 536A confirms that it was intended as a regulatory measure, authorizing supervision and enforcement of its provisions by the auditor. It is devoid of any suggestion of a private remedy. We believe that, had the legislature intended to create a private right of action against a corporation directly by a creditor, and thus to create an exception to the general rule discussed above, it would have said so clearly.

■ C. The plaintiffs' petition also asserted a breach of a fiduciary duty by the defendants, relying on *Kurth v. Van Horn*, 380 N.W.2d 693 (1986), where we said that, while a fiduciary relationship does not automatically arise in a banker-depositor relationship,

the circumstances giving rise to fiduciary duty are so diverse, any such relationship must be evaluated on the facts and circumstances of each individual case.

. . . .

... [W]e look to the evidence in the case to establish the basis for the fiduciary relationship.

380 N.W.2d at 696 (citations omitted).

Based upon this, the plaintiffs contend that all such cases involve fact issues and that consideration alone is sufficient to re-quire denial of a motion to dismiss. We do not agree. *Kurth* is distinguishable, because it involved a one-on-one relationship between a banker and a potential borrower. The question was whether the banker owed the borrower a fiduciary duty to counsel him carefully in the matter of borrowing money from the bank. In the present case, as already noted, there is no claim that any of the defendants occupied a position of trust in receiving the plaintiffs' deposits, or that the plaintiffs relied on them in placing their deposits in the company. Despite a broad reading of the petition, such a claim is not even suggested; as previously noted, the complaint is that the defendants dissipated the money *after* it was received from the plaintiffs.

■ D. The plaintiffs' petition also alleged the breach of an implied contract to invest plaintiffs' funds prudently "and in such a way as to protect the funds of plaintiffs." In essence, this division alleges the breach of an implied contract based on duties owed to the plaintiffs which we have previously discussed and have held not to exist. We therefore summarily reject this argument.

■ E. The plaintiffs also assert in their petition that the defendants were grossly negligent. They concede that, as a general rule, gross negligence is not a distinct cause of action but rather a measure of negligence. *See Denny v. Chicago, Rock Island & Pac. Ry.*, 150 Iowa 460, 464–65, 130 N.W. 363, 364 (1911). They argue, however, that *Thompson v. Bohlken*, 312 N.W.2d 501 (Iowa 1981), recognized a separate cause of action based on gross negligence. We do not believe *Thompson* may be so read.

*Thompson* involved an interpretation of Iowa Code section 85.20 which had been amended to prohibit suits against co-employees unless the injury is caused by "gross negligence amounting to such lack of care as to amount to wanton neglect for the safety of another."

We recognized this statutory amendment as a legislative restriction on the previously existing common-law right of action

against co-employees. *See, e.g., Craven v. Oggero*, 213 N.W.2d 678, 682 (Iowa 1973) (recognizing right against co-employee at common law). Far from creating a new basis of liability, the "gross negligence" discussed in *Thompson* was a restriction, not an expansion, of the scope of negligence suits. It is, furthermore, a concept limited by its terms to workers' compensation cases. *See* Iowa Code § 85.20 (1985).

We agree with the district court that the petition did not state a claim upon which any relief could be granted. We therefore affirm.

AFFIRMED.

All Justices concur except McGIVERIN, C.J., and CARTER, SCHULTZ and SNELL, JJ., who take no part.