Galen ELDRED; V.J. Kopecky; Stella Kopecky, Maxine Ferreter; Steven E. Eldred, Custodian; G. Terry Eldred, Custodian; Milton Kopecky; Edward Straka; Darleen Straka; Otto Straka; Frances Winchell; Harlan A. McKinney; Ruth McKinney; Raymond Conrad; Lois Holsinger, Deceased; and Arlene Topinka and Irene Conrad, On Behalf of Themselves and Others Similarly Situated, Appellants,

v.

McGLADREY, HENDRICKSON & PULLEN, A Partnership, Appellee,

and

State of Iowa, The Merchants National Bank of Cedar Rapids, and John Doe, Defendants.

No. 89–1606.

Supreme Court of Iowa.

April 17, 1991.

Nick Critelli of Nick Critelli Associates, P.C., Des Moines, for appellants.

Richard L. Miller, Jr., Chicago, Ill., and Roger T. Stetson and Quentin R. Boyken of Belin, Harris, Helmick, Tesdell, Lamson & McCormick, P.C., Des Moines, for appellee.

Considered by HARRIS, P.J., and LARSON, NEUMAN, SNELL, and ANDREASEN, JJ.

ANDREASEN, Justice.

The plaintiffs in this case are eighteen of approximately 18,000 investors who hold thrift certificates or subordinated debentures issued by MorAmerica Financial Corporation (MorAmerica) and its wholly owned subsidiary the Morris Plan Company of Iowa (Morris Plan). The defendant, McGladrey, Hendrickson & Pullen (McGladrey), an accounting firm, audited MorAmerica and Morris Plan in 1983 and issued an independent auditor's report. Later, the financial conditions of MorAmerica and Morris Plan changed for the worse, and both companies filed for chapter 11 bankruptcy in August 1985. This appeal presents the issue of whether the plaintiffs, who never saw or directly relied on McGladrey's opinion, may now recover their losses from McGladrey.

I. *Background.*

McGladrey served as certified public accountant for MorAmerica and its subsidiaries at all relevant times until January of 1985 when it resigned due to a dispute over the valuation of certain assets. McGladrey's final opinion for MorAmerica and Morris Plan was issued in December 1983, and covered the fiscal year ending September 30, 1983.

Plaintiffs allege they have a cause of action against McGladrey based on theories of fraudulent, negligent and innocent misrepresentation because McGladrey did not alert state officials that the financial conditions of MorAmerica and Morris Plan had deteriorated after the 1983 audit. The plaintiffs also claim that McGladrey aided and abetted a violation of Iowa Code section 536A.25 (1983) when it failed to call to the state's attention the fact that MorAmerica and Morris Plan had made unsecured loans of several million dollars to Peter Bezanson, chairman of MorAmerica's board of directors. They urge section 536A.25 provides them with a private remedy for the alleged violation. The district court granted McGladrey's motion for summary judgment; plaintiffs have appealed.

Plaintiffs have asserted their claims against MorAmerica and Morris Plan in the bankruptcy proceedings. Plaintiffs also sued the state for negligence; that action was dismissed in November 1983. They also sued the bank which served as trustee for the thrift certificates and the subordinated debentures. We affirmed the summary judgment for the trustee. *Eldred v. Merchants Nat'l Bank*, 468 N.W.2d 221 (Iowa 1991).

Another group of investors sued the directors and officers of MorAmerica, alleging negligence, breach of fiduciary duty, gross negligence and breach of implied contract. In that case we affirmed the district court's dismissal of the petition for failure to state a claim on which any relief could be granted. *Unertl v. Bezanson*, 414 N.W.2d 321, 323 (Iowa 1987).

II. *Tortious Misrepresentation.*

Plaintiffs put forth three different theories of tortious misrepresentation—fraudulent misrepresentation, negligent misrepresentation and innocent misrepresentation. Because the points which we find to be dispositive are common to all three, we consider them together.

A. Reliance.

▇ An essential element of plaintiffs' claims is reliance. Restatement (Second) of Torts §§ 537, 552, 552C (1977). Plaintiffs concede they never actually saw or read the reports submitted by McGladrey. They contend, however, that the state relied on the reports and that they relied on the state.

While privity is not required, all three of plaintiffs' misrepresentation theories require that the plaintiffs justifiably rely to

their detriment on some misrepresentation. Restatement (Second) of Torts §§ 537, 552, 552C; *see also Pahre v. Auditor of State*, 422 N.W.2d 178, 180–81 (Iowa 1988) (dealing with § 552). Unlike the cases cited to us by plaintiffs, this is not a case in which reliance may be inferred, as the plaintiffs concede they never saw McGladrey's opinion nor were any misrepresentations concerning its contents ever made to them.

Iowa has rejected the rule laid down by Chief Judge Cardozo in *Ultramares Corp. v. Touche*, 255 N.Y. 170, 174 N.E. 441 (1931), that in order to recover from a public accountant for negligent misrepresentation, a plaintiff must have been in privity with the defendant. *Ryan v. Kanne*, 170 N.W.2d 395, 402–03 (Iowa 1969). Iowa has adopted the rule of section 552 of the Restatement. *Id.*

While we have rejected the requirement of privity, we share his concern that accountants should not be exposed to "a liability in an indeterminate amount for an indeterminate time to an indeterminate class." *Ultramares*, 255 N.Y. at 179, 174 N.E. at 444. This concern was addressed in *Briggs v. Sterner*, 529 F.Supp. 1155 (S.D.Iowa 1981):

> An expansion of the accountants' duty of ordinary care to include all potential lenders or investors in a public offering of instruments intended to produce risk capital would deny the defendants the protection provided by the limited duty imposed in *Ryan* and *Larsen* [*v. United Federal Savings & Loan Assn. of Des Moines*, 300 N.W.2d 281 (Iowa 1981)]. This protection is premised on the Iowa Supreme Court's recognition that the "spectre of unlimited liability" evoked by "claims devastating in number and amount" could crush an accountant defendant "because of a momentary lapse from proper care."

*Id.* at 1177 (quoting *Beeck v. Kapalis*, 302 N.W.2d 90, 97 (Iowa 1981)).

The question of indirect reliance was addressed by the court in *Cammer v. Bloom*, 711 F.Supp. 1264 (D.N.J.1989). There, the court dismissed counts of fraud and deceit as to all plaintiffs who could not allege they had directly relied on the negligently made audit report. *Id.* at 1297–98. The court also dismissed a count of negligent misrepresentation as to all plaintiffs who could not allege (1) they had received the audit report from the audited company for the purpose of making a business decision, and (2) they had individually relied on the report. *Id.* at 1298–99.

In *Bonhiver v. Graff*, 311 Minn. 111, 248 N.W.2d 291 (1976), the plaintiff had not directly received the accountant's negligently made representations; however, as here, the representation had been made to the state insurance commissioner. Unlike this case, however, the plaintiffs in *Bonhiver* had met with the commissioner and received assurances as to the financial soundness of the accountant's client. These assurances were based on the accountant's negligent misrepresentations. Thus, in *Bonhiver*, the essence of the accountant's misrepresentations was conveyed to the plaintiffs. Here the plaintiffs received no such assurances from either the commissioner or McGladrey. We hold that this sort of vicarious reliance is too weak to support a finding of tortious misrepresentation.

### B. McGladrey's Duty to Update.

 Even if we were to find reliance on the plaintiffs' part, their claims must still fail because McGladrey's silence in this case did not constitute a misrepresentation. Although plaintiffs concede that McGladrey's final audit report in 1983 was materially correct when issued, they urge that McGladrey had a duty to report to the state any material changes in the condition of MorAmerica or Morris Plan of which it was aware. Plaintiffs contend that the sharp decline in the financial status of MorAmerica and Morris Plan "materially changed the nature of the September 30, 1983, opinion of Defendant McGladrey, which had heretofore been disseminated to the State of Iowa."

We believe plaintiffs misconceive the role of certified public accountants and their opinions. As McGladrey has pointed out, an audit is like a snapshot of a client's

financial condition at a given time. Changes which occur after that time are irrelevant for purposes of the audit. It is true, as plaintiffs point out, that if an accountant learns that financial statements for which he previously gave an opinion contain material misstatements that would make his report inaccurate *when made,* he may have a duty to make corrections. *See, e.g., Hirsch v. du Pont,* 553 F.2d 750, 761 (2d Cir.1977); *In re Am Int'l, Inc. Sec. Litigation,* 606 F.Supp. 600, 607 (S.D.N.Y. 1985); *Gold v. DCL Inc.,* 399 F.Supp. 1123, 1127 (S.D.N.Y.1973). Here, however, plaintiffs concede that the financial statements upon which McGladrey based its opinions were materially correct when made. McGladrey had no ongoing duty continually to update its audit report to reflect the changing fortunes of its clients. Indeed, McGladrey may have had an ethical duty not to disclose confidential information which did not pertain to its audits. *See* 193A Iowa Admin.Code 11.5(1).

Despite the limited role of auditors and the inherent risk involved in conducting business in today's society, the investing public tends to blame the auditor when it is hurt financially by a business failure. Note, *The Role and Responsibility of Accountants in Today's Society,* 13 J. Corp. Law 863, 882–83 (1988). However, accountants do not guarantee audited financial statements, *id.,* and they may not vouch for the achievability of any forecast of future transactions. 193A Iowa Admin. Code 11.4(4). We hold that an accountant has no duty to update an audit report which was materially correct when made. McGladrey's silence therefore was not a misrepresentation.

III. *Plaintiffs' Claim Under Section 536A.*

 ▮ Plaintiffs claim that section 536A.25 was violated when MorAmerica loaned money to its chairman Peter Bezanson and that McGladrey aided and abetted that violation by failing to report the transaction to state authorities. In *Unertl v. Bezanson,* 414 N.W.2d 321, 326 (Iowa 1987), we held no private remedy was created by chapter 536A. We cannot reach a different result in this case. We reaffirm our holding in *Unertl* that there is no private remedy for a violation of chapter 536A.

AFFIRMED.