Theresa J. STOTTS, Appellant,

v.

Daniel C. EVELETH, Northwood–Kensett Community School District, Thomas Spear, Kenneth Williams, and BCLUW Community School District, Appellees.

No. 03–1435.

Supreme Court of Iowa.

Nov. 10, 2004.

James L. Sayre of James L. Sayre, P.C., Clive, for appellant.

Randall E. Nielsen of Pappajohn, Shriver, Eide & Nicholas P.C., Mason City, for appellee Eveleth.

Joel J. Yunek of Laird, Heiny, McManigal, Winga, Duffy & Stambaugh, P.L.C., Mason City, for appellee Northwood–Kensett Community School District.

Kirke C. Quinn and C. Ann Jordan of Jordan, Mahoney, Jordan & Quinn, P.C., Boone, for appellees Thomas Spear, Kenneth Williams, and BCLUW Community School District.

LAVORATO, Chief Justice.

The question here is whether there is any civil liability arising out of a sexual relationship between a high school student and a teacher. The student appeals from a district court order granting summary judgment to the teacher and from the court's order dismissing the student's claim against several remaining defendants. We affirm.

## I. Background Facts.

The BCLUW Community School District (BCLUW) employed Daniel C. Eveleth as a licensed and certified teacher from 1984 through 1997. During the 1996–97 school year, a complaint of sexual harassment was filed against Eveleth. Following their investigation, investigators believed the complaint was true.

Thereafter, Eveleth and Thomas Spear, BCLUW superintendent, reached a settlement. Eveleth would resign in return for a positive letter of recommendation. In addition, BCLUW would not file a complaint with the Iowa board of educational examiners (board), and BCLUW staff and school board members would not tell Eveleth's prospective employers about the investigation. Eveleth resigned, the school district did not file a complaint, and Spear and Kenneth Williams, BCLUW High School principal, signed a positive letter of recommendation.

Following his resignation, Eveleth applied for a teaching position with the Northwood–Kensett Community School District (Northwood–Kensett) during the summer of 1997. Eveleth neglected to tell Northwood–Kensett about what happened at BCLUW. Nor did Williams tell Jerry McIntire, Northwood–Kensett's superin-

tendent, about what happened when McIntire contacted Williams about Eveleth's application. Williams simply told McIntire that Eveleth had resigned and did not tell him that Eveleth had been asked to leave.

Northwood–Kensett employed Eveleth as a teacher starting with the 1997–98 school year. Eveleth taught junior high while employed by Northwood–Kensett. Although the junior high and high school were in the same building, they were separated from each other.

Theresa J. Stotts was a senior at Northwood–Kensett during the 1999–2000 school year. A sexual relationship developed between Eveleth and Stotts beginning in February 2000. By that time, Stotts had reached the age of eighteen. Eveleth was not and had not been one of Stotts's teachers. Nor was he an advisor or coach for any of her activities. When the couple engaged in sex, it was always away from the school premises, and it was always consensual.

Northwood–Kensett learned of the sexual relationship when Stotts's mother sent the school district a complaint. On Northwood–Kensett's behalf, an investigation was conducted that determined the complaint was true. Following the investigation, Northwood–Kensett requested and received Eveleth's resignation. Northwood–Kensett also filed a complaint with the board. Thereafter, Eveleth voluntarily turned in his teaching license.

## II. Proceedings.

In January 2002 Stotts sued Eveleth and Northwood–Kensett. Stotts alleged Eveleth was negligent and breached fiduciary duties by initiating and continuing a sexual relationship with her. Stotts also alleged that Eveleth was negligent per se by maintaining the sexual relationship in violation of statute and of educational and professional standards. Stotts alleged that Northwood–Kensett was negligent and breached fiduciary duties by failing to properly investigate Eveleth's background.

Following discovery, during which Stotts learned about Eveleth's behavior while employed by BCLUW, she added as additional defendants BCLUW, its superintendent (Spear), and its high school principal (Williams). She alleged these defendants were negligent and breached fiduciary duties by (1) failing to forward to the board a complaint found to be true, (2) deliberately suppressing the information they had concerning Eveleth, and (3) misrepresenting the facts concerning educational matters.

Later, Eveleth filed a motion for summary judgment as to Stotts's theories of negligence and breach of fiduciary duty. The district court sustained the motion, concluding that Stotts had neither a statutory nor common-law cause of action against Eveleth. Concluding that a fiduciary duty does not automatically exist between a teacher and a student, the court found as a matter of law that a fiduciary duty did not exist between Eveleth and Stotts.

Following the district court's ruling, the remaining defendants filed motions to dismiss. The thrust of their motions was simply that if Eveleth owed no duty to Stotts, they owed no duty to her either. The court sustained the motions.

Stotts appealed from both rulings.

## III. Issues.

Stotts contends the district court erred in concluding that Eveleth owed her no duty that would give rise to an actionable claim for negligence. In support of her contention, Stotts argues that the duty Eveleth owed her derives from statutes and administrative regulations and common law.

In addition, Stotts contends that the student-teacher relationship between Eveleth and her imposed upon Eveleth a fiduciary duty to act in her best interest. Eveleth breached that duty when he took sexual advantage of her.

Finally, Stotts contends the district court erred in sustaining the remaining defendants' motions to dismiss. In support of this contention, Stotts relies on her arguments concerning Eveleth's statutory, common-law, and fiduciary duties to her.

## IV. Scope of Review.

We recently summarized rules governing our review of summary judgment rulings in *Hegeman v. Kelch*:

We review a summary judgment ruling for correction of errors at law. Summary judgment is appropriate under Iowa Rule of Civil Procedure 1.981 only when the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. We examine the record before the district court to determine whether any genuine issue of material fact exists and whether that court correctly applied the law. Summary judgment is the appropriate remedy where questions of statutory interpretation are involved.

666 N.W.2d 531, 533 (Iowa 2003) (citations omitted).

Stotts's appeal raises the issue whether a duty existed. Because the existence of a duty is a legal issue for the court, summary judgment is a proper vehicle to resolve the issue. *Kolbe v. State*, 625 N.W.2d 721, 725 (Iowa 2001).

We review rulings on motions to dismiss for correction of errors at law. Iowa R.App. P. 6.4; *Bauman v. Maple Valley*

*Cmty. Sch. Dist.*, 649 N.W.2d 9, 12 (Iowa 2002).

## V. Negligence.

As mentioned, Stotts alleged in her petition that Eveleth was negligent by initiating and continuing a sexual relationship with her. An actionable claim of negligence includes " 'the existence of a duty to conform to a standard of conduct to protect others, a failure to conform to that standard, proximate cause, and damages.' " *Van Essen v. McCormick Enters. Co.*, 599 N.W.2d 716, 718 (Iowa 1999) (citations omitted). We look to legislative enactments, prior judicial decisions, and general legal principals as a source for the existence of a duty. *Id.*

Stotts claims the duty that Eveleth owed her is derived from (1) statutes and administrative regulations and (2) the common law.

**A. Statutory duty.** As for the statutory duty, Stotts relies on Iowa Code sections 272.1 and .2 (Supp.2003) and Iowa Administrative Code rule 282–12.2(1)(c) (2003).

Section 272.1(13) defines a student for our purposes to mean "a person who is enrolled in a course of study at a school...." Iowa Code § 272.1(13). Iowa Code section 272.1(15) defines a teacher as a

licensed member of a school's instructional staff who diagnoses, prescribes, evaluates, and directs student learning in a manner which is consistent with professional practice and school objectives, shares responsibility for the development of an instructional program and any coordinating activities, evaluates or assesses student progress before and after instruction, and who uses the student

evaluation or assessment information to promote additional student learning. *Id.* § 272.1(15).

Iowa Code section 272.2 creates the board of educational examiners and gives the board "exclusive authority" to license teachers; enforce the board's rules through revocation or suspension of a license, or by other disciplinary action; establish and adopt rules; deny or revoke a license; and manage other responsibilities enumerated in section 272.2. Iowa Code § 272.2(1), (4), (12), (13), (14), (15). Rule 282—12.2(1)(*c*) provides that it is unprofessional and in violation of the board's criteria for a teacher to be sexually involved with a student, even if the sexual involvement is consensual. Iowa Admin. Code r. 282—12.2(1)(*c*). According to the rule, sexual involvement includes, among other things, commission of any sex act as defined in Iowa Code section 702.17. *Id.*

At the time of the alleged acts of negligence, it is uncontroverted that Stotts was a student within the meaning of section 272.1(13), Eveleth was a teacher within the meaning of section 272.1(15), the two engaged in sex acts as defined in section 702.17, and the sex acts were consensual.

■ However, this is not the end of the inquiry because even if the statutes and regulation upon which Stotts relies create a duty, violation of that duty does not necessarily give rise to a tort claim. *Sanford v. Manternach*, 601 N.W.2d 360, 371 (Iowa 1999). Such a violation gives rise to a private cause of action only when the statute, explicitly or implicitly, provides for such an action. *Id.*

■ There is no provision expressly providing a private cause of action in either Iowa Code chapter 272 or Iowa Administrative Code rule 282–12.2(1)(*c*) for a teacher initiating and continuing a sexual relationship with a student. We therefore

employ the following four-factor test to determine whether a private cause of action could be implied from Iowa Code chapter 272:

(1) Is the plaintiff a member of the class for whose benefit the statute was enacted? (2) Is there any indication of legislative intent, explicit or implicit, to either create or deny such a remedy? (3) Would allowing such a cause of action be consistent with the underlying purpose of the legislation? (4) Would the private cause of action intrude into an area over which the federal government or a state administrative agency holds exclusive jurisdiction?

*Kolbe*, 625 N.W.2d at 726–27. No implied private cause of action exists if any one of these four factors is not satisfied. *Id.* at 727. In addition, if we do not infer a private cause of action for statutory violations, we likewise refuse to infer such an action from the violation of a rule enacted to carry out statutory directives. *Id.*

■ The district court applied the four-factor test and concluded there was no indication of legislative intent to implicitly create a private cause of action—the second factor of the four-factor test. For reasons that follow, we agree.

Iowa Code section 272.2 gives the board the exclusive authority to "[e]nforce rules adopted by the board through revocation or suspension of a license, or by other disciplinary action against" a teacher "licensed by the board." Iowa Code § 272.2(4). Section 272.2 also gives the board exclusive authority to "[a]dopt rules to determine whether an applicant is qualified to perform the duties for which a license is sought." *Id.* § 272.2(14). Iowa Code section 272.2(14) directs that such rules shall include, among other things, the board's authority to deny a license or revoke the license "of a person upon the board's finding by a preponderance of evi-

dence that either the person has been convicted of a crime or that there has been a founded report of child abuse against the person." *Id.* § 272.2(14)(*a*). Finally, Iowa Code section 272.2(14) requires that such rules "shall require the board ... to revoke the license of a person" who has been found guilty or has pled guilty to a number of criminal offenses "established pursuant to Iowa law," including sexual contact with a child or minor as set out in Iowa Code chapter 709. *Id.* § 272.2(14)(*b*)(1)(b). The Iowa criminal code defines a child as "any person under the age of fourteen years." *Id.* § 702.5 (2003). Pursuant to Iowa Code section 599.1, "[t]he period of minority extends to the age of eighteen years." *Id.* § 599.1 para. 1. For purposes of juvenile law, a child is a person under eighteen years of age. *Id.* § 232.2(5) (Supp.2003).

The administrative rule upon which Stotts relies states that it is unprofessional and in violation of the board's criteria for a teacher to be sexually involved with a student, even if the sexual involvement is consensual. Iowa Admin. Code r. 282—12.2(1)(*c*).

Section 272.2 clearly suggests that this provision was intended to be a regulatory measure designed to provide the board with authority to suspend or revoke a teacher's license in those situations when violations of its provisions occur. Section 272.2 provides not even a hint that the legislature intended to provide a private cause of action for such violations. *Cf. Kolbe,* 625 N.W.2d at 727 (holding that statutory provisions were intended as regulatory measures limiting the driving privileges of those incapable of operating a motor vehicle safely and were devoid of any suggestion of a private remedy).

Additionally, section 272.2 gives the board *exclusive* authority to enforce its rules, which signals the legislature's intent to deny court enforcement through a private cause of action. Moreover, concerning the fourth factor of the four-factor test, allowing such an action would be tantamount to an intrusion into an area over which a state administrative agency holds exclusive jurisdiction.

Because we do not infer a cause of action for violation of section 272.2, we likewise do not infer such an action for the violation of rule 282–12.2(1)(*c*), implemented to carry out this statutory provision. Our reason for not inferring a cause of action from the rule is that administrative rules cannot go any further than the law permits. *Kolbe,* 625 N.W.2d at 727.

Stotts further argues that changes in the law concerning sexual exploitation by a school employee, effective July 1, 2003, long after the events in question, recognize a cause of action already exists. *See* Iowa Code §§ 614.1(12), 709.15. Because Stotts did not secure a district court ruling on the issue, she failed to preserve the issue for our review. *See Meier v. Senecaut,* 641 N.W.2d 532, 540 (Iowa 2002) (error preservation "requires a party seeking to appeal an issue presented to, but not considered by, the district court to call to the attention of the district court its failure to decide the issue").

Although we conclude sections 272.1 and .2 and rule 282–12.2(1)(*c*) do not provide Stotts with a private cause of action against Eveleth, we still must decide whether Eveleth owed Stotts a common-law duty, a breach of which would entitle her to pursue a claim for money damages against him.

**B. Common-law duty.** Apart from statute, in any tort case, the threshold question is whether the defendant owes a legal duty to the plaintiff. *J.A.H. ex rel. R.M.H. v. Wadle & Assocs., P.C.,* 589 N.W.2d 256, 258 (Iowa 1999). "A legal

duty 'is defined by the relationship between individuals; it is a legal obligation imposed upon one individual for the benefit of another person or particularized class of persons.' " *Id.* (citation omitted). Whether, under the particular facts of a case, such a duty exists is a question of law. *Id.*

■ In deciding this question of law, three factors govern our analysis: (1) the relationship between the parties, (2) reasonable foreseeability of harm to the person who is injured, and (3) public policy considerations. We use these factors under a balancing approach and not as three distinct and necessary elements. In the end, whether a duty exists is a policy decision based upon all relevant considerations that guide us to conclude a particular person is entitled to be protected from a particular type of harm.

*Id.* (citations omitted).

Stotts contends that under this approach a person's status as a teacher imposes upon that person a legal duty to refrain from any sexual contact with a student. This duty exists regardless of whether or not there is a teacher-student relationship. Thus, Stotts argues Eveleth owed her a legal duty to refrain from engaging in any type of sexual contact with her while she was a student.

■ At all times during her consensual sexual relationship with Eveleth, Stotts was at least eighteen years old, which is above the age of consent as far as our criminal statutes are concerned. So, for all intents and purposes, what we have here is a sexual relationship between two consenting adults that was not contrary to any law at the time. Moreover, Stotts was never a student of Eveleth, and Eveleth never exercised any authority or influence over her. Finally, all of the sexual contact took place away from school premises. Given these facts, should we as a matter of public policy find that Eveleth owed Stotts a duty to refrain from any sexual contact with her simply because she was a student?

One court has considered this precise issue under similar facts. *See Hei v. Holzer*, 139 Idaho 81, 73 P.3d 94 (2003). *Hei* involved a relationship between a student and her physical education teacher and coach. *Id.* at 97. The student also helped the teacher as a teacher's aide. *Id.* One month after the student turned eighteen, she and the teacher began a romantic relationship that eventually involved sexual intercourse. *Id.* The student and her parents sued the teacher and several others. *Id.* at 98. Of particular relevance here is the student's negligence claim against the teacher. The Idaho Supreme Court sustained the trial court's grant of summary judgment on this claim, holding:

While we have recognized a duty of care owed by teachers to students, we have not recognized such a duty for students who have reached the age of majority and entered into a consensual relationship with a teacher that is otherwise legal.

*Id.* (citation omitted). Implicit in this holding is the court's refusal to recognize as a matter of public policy such a duty.

We likewise refuse to find a duty of care here. At the time, the sexual contact was not contrary to any criminal or civil statute. Moreover, there was no special teacher-student relationship between Eveleth and Stotts. Thus, Eveleth was not in a position to exert pressure on Stotts to engage in sex at the risk of dire consequences if she refused. So there was no reasonable foreseeability of harm to Stotts simply because at the time of the sexual contact Eveleth was a teacher and Stotts was a student. While Eveleth's behavior

in having sexual relations with a student is offensive, that offensiveness is not enough to create a duty on the part of Eveleth to refrain from such relations with Stotts.

## VI. Breach of Fiduciary Duty.

 Stotts also contends that a fiduciary relationship existed between Eveleth and her, and for that reason Eveleth owed Stotts a duty to refrain from sexual contact with her. That duty, she argues, is based on a teacher's general duty to act in the best interest of a student. Stotts asserts that Eveleth abused his position as a teacher and the trust she as a student placed in him by taking sexual advantage of her. Therefore, Stotts concludes, the district court erred in finding (1) that a fiduciary duty does not automatically exist between a teacher and student and (2) as a matter of law no such duty existed between Eveleth and her.

 A fiduciary relationship is one in which a person is under a duty to act for the benefit of another as to matters within the scope of the relationship. *Mendenhall v. Judy*, 671 N.W.2d 452, 455 (Iowa 2003). We have considered a fiduciary relationship as a very broad term

> "embracing both technical fiduciary relations and those informal relations which exist wherever one man trusts in or relies upon another. One founded on trust or confidence reposed by one person in the integrity and fidelity of another. A 'fiduciary relation' arises whenever confidence is reposed on one side, and domination and influence result on the other; the relation can be legal, social, domestic, or merely personal. Such relationship exists when there is a reposing of faith, confidence and trust, the placing of reliance by one upon the judgment and advice of the other."

*Econ. Roofing & Insulating Co. v. Zumaris*, 538 N.W.2d 641, 647 (Iowa 1995) (citation omitted). Because the circumstances giving rise to a fiduciary duty are so diverse, whether such a duty exists depends on the facts and circumstances of each case. *Id.* at 648.

Here, it is uncontroverted that Eveleth was not Stotts's teacher and never had been. In addition, Stotts generated no genuine issue of material fact on whether she reposed faith, confidence, and trust in Eveleth; that she relied on his judgment and advice; or that he dominated and influenced her. The uncontroverted facts are that the relationship was simply one of a sexual nature between two consenting adults. We therefore agree with the district court that as a matter of law no fiduciary duty existed.

## VII. Remaining Defendants.

As mentioned, the district court granted the remaining defendants' motions to dismiss. The motions were premised on the theory that if Eveleth had no duty to Stotts then the remaining defendants likewise had no duty to her. The district court agreed and sustained the motions.

 These defendants chose to file motions to dismiss rather than motions for summary judgment. Before the district court can sustain a motion to dismiss, it must conclude that no state of facts is conceivable under which the plaintiff might show a right of recovery. *Unertl v. Bezanson*, 414 N.W.2d 321, 324 (Iowa 1987). In making this determination, the court must accept as true all the allegations of the petition. *O'Hara v. State*, 642 N.W.2d 303, 305 (Iowa 2002). Stotts's claim against these defendants is premised on Eveleth owing her a statutory and common law duty as well as a fiduciary duty. The district court would therefore have to accept these allegations as true thereby preventing it from sustaining the motion.

That would leave us no choice but to reverse and remand to allow these defendants to file a motion for summary judgment. To conserve judicial resources, we treat the motion to dismiss as a motion for summary judgment. *See Troester v. Sisters of Mercy Health Corp.*, 328 N.W.2d 308, 311 (Iowa 1982) ("in motions to dismiss 'where matters outside the pleadings are relied upon in support of the motion, the proper procedure is to treat the motion as one for summary judgment' ") (quoting Allan D. Vestal & Philip Willson, *Iowa Practice* § 1506(1) (1974)).

Stotts contends the district court erred in holding that the remaining defendants did not have a statutory and common-law duty as well as a fiduciary duty to her when the court dismissed her claims against these defendants. In support of her contention, Stotts relies on her arguments that Eveleth had a statutory and common-law duty to her as well as a fiduciary duty. Stotts acknowledges, as she must, that if Eveleth had no statutory and common-law duty and no fiduciary duty to her, then the remaining defendants likewise had no such duty. In short, there cannot be a right of recovery against these defendants if Eveleth committed no tort. *Cf. Schoff v. Combined Ins. Co. of America*, 604 N.W.2d 43, 53 (Iowa 1999) (holding theories of negligent hiring and supervision apply only when the employee committed an actionable tort).

## VIII. Disposition.

In sum, we conclude Eveleth owed Stotts neither a statutory nor common-law duty. Nor did he owe her a fiduciary duty. The district court therefore correctly sustained Eveleth's motion for summary judgment on her claims against Eveleth. Treating the remaining defendants' motions to dismiss as motions for summary judgment, we conclude the remaining de-

fendants likewise owed her no such duties. The district court therefore correctly dismissed Stotts's claims against these defendants. For all of these reasons, we affirm the district court rulings as to all of the defendants.

**AFFIRMED.**