# IN THE COURT OF APPEALS OF IOWA

No. 14-2069
Filed February 10, 2016

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**GARY LEE THOMAS,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Polk County, Scott D. Rosenberg,

Judge.

        Gary Thomas appeals from his conviction of domestic abuse assault, third

or subsequent offense, following a jury trial. **AFFIRMED.**

        Mark C. Smith, State Appellate Defender, and Stephan J. Japuntich,

Assistant Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney

General, for appellee.

        Considered by Doyle, P.J., Mullins, J., and Goodhue, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2015).

**DOYLE, Presiding Judge.**

Following a jury trial, Gary Thomas was found guilty of domestic abuse assault, third or subsequent offense, in violation of Iowa Code sections 708.1 and .2A(4) (2013). He challenges the sufficiency of the evidence to support his conviction. We affirm.

"Viewing the trial evidence in the light most favorable to the jury's guilty verdict[]," *State v. Romer*, 832 N.W.2d 169, 172-73 (Iowa 2013), the jury could have found the following facts. On the evening of July 17, 2014, Merle and Kim Wilson were watching television in their home, when they heard a man and a woman start arguing outside—loud enough they could hear their voices inside their home over the audio of the television. Merle looked out his patio door through its blinds and saw two people in the street he had never seen before, and he was able to observe them from his door without any obstructions. He could not make out all of their argument, but the "gist [he] got out of it [was the man] wanted [the woman] to go somewhere she didn't want to go," and the man had brought her shoes. At that point, the man "was grabbing her arm, trying to pull her with him, to go with him. She was breaking away from him screaming at him, trying to go the other way." The man started to walk away, and the woman threw the shoes at him, though they did not hit him. The man grabbed the shoes, "picked them up, [and] came back at her." The woman started to back away, like she was afraid, and she fell down or tripped on the curb. The woman tried to get back up, but the man was angry. Merle saw the man push her back down, throw the shoes at her, and kick "her a couple of times in the leg." Kim, watching from a kitchen window, observed the man hitting the woman with the shoes. She also

saw the man "kick at her," but she "couldn't see contact." The Wilsons called 9-1-1, fearing for the woman's safety.

Law enforcement officers arrived approximately thirty minutes after the 9-1-1 call was made and spoke to Merle briefly. Merle told the officers the man had pushed and hit the woman. Merle also believed he told an officer the man kicked the woman a couple of times, but that officer did not recall Merle telling him that, and the detail that Merle observed the man kicking the woman was not in the officer's report.

The officers approached and then separated the people. The man, identified as Gary Thomas, was detained because he was considered the primary aggressor through the witnesses' reports. The woman identified herself as Thomas's wife, Pamela Bennett, but she was uncooperative and was also detained. Both Thomas and Bennett appeared to have been drinking; Bennett's blood alcohol level was above the legal limit, and she was subsequently arrested for public intoxication. Both Thomas and Bennett told officers they were wrestling and had had fights in the past, but both denied there was any physical contact between them, as the Wilsons stated they observed. However, one of the officers noticed some physical marks on Bennett, that she had "redness to her arms," and he documented that in his report. Neither officer ever saw Thomas hit, kick, strike, grab, or otherwise injure Bennett.

Thomas was charged with domestic abuse assault, third or subsequent offense, and the matter was tried to a jury in October 2014. The Wilsons and the officers testified consistent with the above-stated facts. Bennett also testified, but

she denied that Thomas put his hands on her or got loud with her that night. The jury returned a verdict finding Thomas guilty as charged.

Thomas now appeals, challenging the sufficiency of the evidence to support his conviction. He claims the Wilsons did not see what they testified they saw, pointing out some inconsistencies in their testimony, such as Merle testifying the incident occurred earlier in the night than the time the officers testified the call came in, and Merle testifying he told officers Thomas had kicked Bennett but the officers not recalling Merle told them that information. Thomas points out the Wilsons were approximately seventy-five to one-hundred yards away from where they stated the incident occurred. Additionally, he relies upon Bennett's testimony that nothing happened, arguing she was "the only individual qualified to testify to the existence of the elements" of the offense.

We review sufficiency-of-the-evidence challenges for correction of errors at law. *See State v. Robinson*, 859 N.W.2d 464, 467 (Iowa 2015).

> A jury verdict finding of guilt will not be disturbed if there is substantial evidence to support the finding. We consider all the evidence in the record and not just the evidence supporting the finding of guilt. The record is viewed in the light most favorable to the State. Substantial evidence must do more than raise suspicion or speculation, it must convince a rational trier of fact that the defendant is guilty beyond a reasonable doubt.

*Id.* (internal citations and quotation marks omitted). However, it is the province of the jury to resolve conflicts in the evidence, to pass upon the credibility of witnesses, to determine the plausibility of explanations, and to weigh the evidence. *See State v. Williams*, 695 N.W.2d 23, 28 (Iowa 2005). "'Any inconsistencies in the testimony of a defense witness are for the jury's consideration, and do not justify a court's usurpation of the [fact-finding] function

of the jury.'" *Id.* (citation omitted). Thus, "'[i]nherent in our standard of review of jury verdicts in criminal cases is the recognition that the jury [is] free to reject certain evidence, and credit other evidence.'" *State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012) (citation omitted).

Here, viewing the record in the light most favorable to the State, we conclude there was substantial evidence to support the conviction. It was for the jury to resolve the conflicts between the Wilsons' trial testimony and Bennett's testimony. It was the jury's job to determine the witnesses' credibility, and the jury was free to accept the Wilsons' testimony and reject Bennett's testimony, particularly in light of the red marks on Bennett's arms constituting corroborative evidence. The Wilsons testified they saw Thomas hit Bennett. Considering all of the record evidence and all reasonable inferences that may be fairly drawn from it, there was substantial evidence for a jury to find beyond a reasonable doubt that Thomas hit Bennett, supporting that challenged element of the crime. Accordingly, we affirm his conviction for domestic abuse assault, third or subsequent offense.

**AFFIRMED.**