# IN THE COURT OF APPEALS OF IOWA

No. 24-0309
Filed January 23, 2025


**STATE OF IOWA,**
　　　　Plaintiff-Appellee,

**vs.**

**MICHAEL RAYMOND RUSSELL,**
　　　　Defendant-Appellant.
_____


　　　　Appeal from the Iowa District Court for Scott County, Tamra Roberts, Judge.


　　　　A defendant appeals his convictions, claiming there was insufficient evidence as to both counts. **AFFIRMED.**


　　　　Katherine R.J. Scott of New Point Law Firm, PLC, Ames and Jesse A. Macro, Jr. of Macro Law LLP, Des Moines, for appellant.

　　　　Brenna Bird, Attorney General, and Martha E. Trout, Assistant Attorney General, for appellee.


　　　　Considered by Greer, P.J., and Buller and Langholz, JJ.

**GREER, Presiding Judge.**

After an investigation showing Michael Raymond Russell purportedly removed part of a shower track, a jury found him guilty of two crimes: possession of contraband (a dangerous weapon) in a jail facility and criminal mischief in the fifth degree (damage to property). Russell now appeals, arguing the State provided insufficient evidence to prove the necessary element of possession of contraband in a jail facility as to count one, and specific intent to alter or damage property related to the second count of criminal mischief in the fifth degree. Because we find sufficient evidence supports the jury verdicts, we affirm both of his convictions.

**I. Facts and Procedural Background.**

On November 10, 2023, Russell left his cell in the Scott County jail, walked down the corridor to the shower stall, entered, and pulled the privacy curtain tight. There are two shower curtains: one at the entrance to the shower and another internal shower curtain. Although captured by closed-circuit surveillance video, the next ten minutes of Russell's activity in the shower were disputed at trial. But no one disputed that the shower track to the internal shower curtain was broken and removed at some point. The day after Russell was in the shower, jail staff received a complaint that the shower track was broken and found part of it missing. Sergeant Andrew Shark, a manager of the jail's correctional officers, viewed the video footage of the shower area and observed Russell manipulating the shower track as he used the shower. To further investigate, Russell's unit was subjected

to a "shakedown."[1]  During the shakedown, jail officials found a two-inch slit in the mattress in cell 217, the cell Russell had occupied on November 10.  After prying the mattress open, officials removed what was once a portion of the shower track.  The shower track was fashioned into a sixteen-inch homemade weapon, colloquially known as a "shank," with one end sharpened to a point.  The square end of the shank had strips of dark brown cloth wrapped around it, creating a makeshift handle.  The entire item was wrapped in a blanket casing.

After concluding the investigation, Russell was charged with possession of a weapon in a correctional institution, in violation of Iowa Code section 719.7(3)(c) (2023), and criminal mischief in the fifth degree, in violation of section 716.6(2).  The matter proceeded to a jury trial.  Several jail staff testified, including Sergeant Stark.  He testified Russell was the last inmate in the shower before it was damaged, and the video showed Russell "us[ing] a piece of sheet to wedge between the shower track and the ceiling, pull[ing] it as far as he could, and then . . . prying back and forth until [the shower track] snapped."  Deputy Brett Rappel testified he observed a two-inch tear in a mattress in cell 217 and when he opened the mattress found the missing shower track.  He also confirmed that Russell had been staying in cell 217 when the damage to the shower was observed, but he moved to cell 216 later that day.

---

[1] A "shakedown" was described at trial as consisting

> of going to the area we're shaking down—in this case, it was a cell— asking the inmate to put their hands behind their back, handcuffing them, and then we hand search the inmate and search the cell diligently, looking under tables, feeling mattresses, looking anywhere anything could be hidden.

The staff also do cell inspections each morning and evening, but those are not as through as a formal shakedown.

Russell also testified and disputed the State's claims. Agreeing that the shower track was broken but claiming that he found it that way, Russell contended that he only tried to repair it and reported the damage to the jail staff after his shower. On the day that he observed the damaged shower track, Russell testified that he was assigned to cell 217, but the toilet clogged, so he was moved to cell 216 later that day. Noting he was not housed in the room where the shower track was found, he also speculated that no one was able to confirm if other inmates had been in cell 217 before the shower track was found. Russell urged he was innocent and his only purpose for being in the shower was to take a shower; he asserted the jail staff focused only on him during the investigation.

The jury found Russell guilty on both counts. Russell now appeals.

## II. Standard of Review.

We review sufficiency-of-the-evidence challenges for correction of errors at law. *State v. Romer*, 832 N.W.2d 169, 174 (Iowa 2013). "A jury verdict finding of guilt will not be disturbed if there is substantial evidence to support the finding." *State v. Robinson*, 859 N.W.2d 464, 467 (Iowa 2015). In evaluating the presence or absence of substantial evidence, we assess the evidence in "the light most favorable to the prosecution" to determine if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Polly*, 657 N.W.2d 462, 467 (Iowa 2003) (citation omitted). "Evidence is not substantial if it raises only suspicion, speculation, or conjecture." *State v. Speicher*, 625 N.W.2d 738, 741 (Iowa 2001).

**III. Discussion.**

Sufficiency-of-the-evidence claims on direct appeal are not subject to our traditional rules of error preservation. *See State v. Crawford*, 972 N.W.2d 189, 202 (Iowa 2022) ("Iowa's appellate courts can review a defendant's challenge to the sufficiency of the evidence raised on direct appeal without regard to whether the defendant filed a motion for judgment of acquittal. A defendant's trial and the imposition of sentence following a guilty verdict are sufficient to preserve error with respect to any challenge to the sufficiency of the evidence raised on direct appeal.").

Russell argues the State presented insufficient evidence to show he knowingly possessed the shower track, a necessary element of possession of contraband in a jail, or had specific intent to "damage, destroy, or alter" jail property, a necessary element of the criminal-mischief charge. We evaluate each argument in turn.

**A. "Made, Obtained, or Possessed" Contraband.**

Russell contends this is a case of "wrong place, wrong time"; he claims it was a coincidence that he took a shower in the stall where part of the shower track was removed and that, the next day, the jail staff found it in the jail cell where he had been staying. After hearing testimony from jail staff and Russell and viewing the jail footage of Russell in the shower, the jury found the State met its burden. As the jury was instructed, the State had the burden to show that:

> On or about the 10th day of November, 2023, in Scott County, Iowa;
> 1. [Russell] knowingly made, obtained, or possessed contraband (a weapon, or an item capable of inflicting death or injury);

2. in a secure facility, such as a detention facility, jail, or community-based correctional facility.

Russell takes issue with the "possession" element—he argues the State did not provide sufficient evidence that he either actually or constructively possessed the sixteen-inch shank. *See State v. Reed*, 875 N.W.2d 693, 705 (Iowa 2016) ("Possession [of contraband] may be actual or constructive." (internal footnote omitted)). In this matter, the parties did not request, nor did the court submit to the jury, a jury instruction limiting the term "possession" to either constructive or actual possession. Without cabining the "law of the case" to one theory of possession and with a general verdict from the jury, we must affirm the jury's verdict if either theory is supported by substantial evidence. *State v. Canal*, 773 N.W.2d 528, 530 (Iowa 2009) ("[T]he jury instructions become the law of the case for purposes of our review of the record for sufficiency of the evidence."); *see* Iowa Code § 814.28; *State v. Hill*, No. 22-2109, 2024 WL 3050513, at *3 (Iowa Ct. App. June 19, 2024) ("[W]e are required to affirm the jury's verdict if at least one alternative theory presented to the jury is supported by substantial evidence . . . ."). Here, ample evidence exists in the record for a reasonable jury to find Russell actually possessed an item capable of inflicting death or injury. While Russell would have us engage in an analysis involving constructive possession, we pass because substantial evidence of his actual possession of the shower track is all that is required to support the verdict rendered.

"A person is in actual possession of something on or around [his] person when [he] 'has direct physical control' of it." *State v. Nickens*, 644 N.W.2d 38, 41 (Iowa Ct. App. 2002) (citation omitted). Actual possession only requires the

individual had "physical possession at some point in time." *State v. Thomas*, 847 N.W.2d 438, 442 (Iowa 2014). "[A]ctual possession may be shown by direct or circumstantial evidence." *Id.* (citation omitted).

A reasonable juror could find that Russell had actual physical control over the broken shower track as he removed it from the shower and exited to return to cell 217. The ten minutes of the surveillance video shows Russell entering the shower stall on November 10 with his right hand in a cast. The angle of the camera provides a clear view of the upper edge of Russell's cast with nothing sticking out, which is described as "a clean line" by the State. After entering the shower stall, Russell spends most of the time behind the back shower curtain, which shows him tampering with the internal shower curtain track. After several minutes of maneuvering the track bar back and forth, Russell breaks the shower track in two. At that point, the half of the back shower curtain is hanging unsupported by any track. The video shows Russell leaving the shower one to two minutes later, walking into a common area to retrieve his shirt. When Russell leaves the shower to retrieve his shirt, a light-colored or silver item breaks the "clean line" of his cast, and it appears that the portion of the shower track is sticking out above the cast. Instead of putting on his shirt in the common area, Russell re-enters the privacy area, closing the first curtain. He then appears to put on his shirt and slides the now loosely hanging back internal shower curtain to the side, which disguised the impact of the damage to the track. When Russell finally exits the shower, the "clean line" of the upper edge of his cast is again apparent. As Russell testified, he returned to jail cell 217, a special management cell housing only one inmate:

Russell. Later that day, the toilet in cell 217 clogged and became inoperable. Russell moved to a neighboring cell, cell 216.

To supplement the closed-circuit video footage, the State called Sergeant Stark, who described his observations that Russell had "[pried] the shower track off of the ceiling." Lieutenant Jon Ronnebeck, a corrections officer, also confirmed the video footage content and that the contraband taken was the shower track.

After reviewing the evidence in a light most favorable to the State, we find a reasonable jury could conclude—based on the video footage and jail staff testimony—that Russell entered the shower, tampered with the shower track until a portion of the curtain track was dislodged from the ceiling, and then placed a piece of the broken track in his cast, ultimately removing it to cell 217. So, substantial evidence supports the finding Russell exerted direct physical control over the tampered shower track at "some point of time," constituting actual possession.

Thus, Russell fails in his challenge to the sufficiency of the evidence related to possession of contraband in a jail facility.

**B. Specific Intent to Damage, Destroy, or Alter Jail Property.**

As a part of establishing the elements of criminal mischief in the fifth degree, the State had to prove Russell "acted with the specific intent to damage, destroy, or alter the [shower stall]." According to Russell, the State did not provide sufficient evidence to show he had the requisite specific intent. As defined by the jury instructions in this case, specific intent means:

> not only being aware of doing an act and doing it voluntarily, but in addition, doing it with a specific purpose in mind. Because determining the defendant's specific intent requires you to decide

what he was thinking when an act was done, it is seldom capable of direct proof. Therefore, you should consider the facts and circumstances surrounding the act to determine the defendant's specific intent. You may, but are not required to, conclude a person intends the natural results of his acts.

The State points to the closed-circuit video to show specific intent, where, according to the State, Russell can be seen bending the shower track back and forth, "working on" it, until the shower track breaks in half. A jury could infer that Russell's actions, as captured on video, showed he intended to alter and damage the shower track. The jury did not have to believe Russell's testimony he was only attempting to fix the track because it was broken when he entered the shower stall.

It is the jury's role "to sort out the evidence presented and place credibility where it belongs." *Holmes v. State*, 775 N.W.2d 733, 737 (Iowa Ct. App. 2009). The jury's credibility assessment of Russell's testimony is not on review. Our task is to determine if sufficient evidence underpins the jury's ultimate assessment. Because the closed-circuit footage could reasonably be construed to show Russell breaking the shower track, sufficient evidence in the record supports a finding of specific intent.

**IV. Conclusion.**

Because substantial evidence supports the jury's determinations on both crimes, we affirm Russell's convictions.

**AFFIRMED.**