# IN THE SUPREME COURT OF IOWA

No. 23–0201

Submitted December 14, 2023—Filed April 26, 2024

**KIRKWOOD INSTITUTE INC.,**

Appellant,

vs.

**IOWA AUDITOR OF STATE ROB SAND, JOHN MCCORMALLY,** and **OFFICE OF THE AUDITOR OF STATE,**

Appellees.

---

Appeal from the Iowa District Court for Polk County, Robert Hanson, Judge.

An entity that requested public records from the Office of the Auditor of State appeals the district court's grant of summary judgment dismissing its claims alleging statutory violations. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

McDermott, J., delivered the opinion of the court, in which all justices joined.

Alan R. Ostergren (argued), Des Moines, for appellant.

Brenna Bird, Attorney General; Tessa M. Register, Assistant Solicitor General (until withdrawal); and David M. Ranscht (argued), Assistant Attorney General for appellees.

**McDERMOTT, Justice.**

The Kirkwood Institute sent an open records request to the Office of the State Auditor seeking emails between the Auditor's office and two investigative reporters. The Auditor's office in its response withheld ten email chains as exempt, citing Iowa Code § 11.42 (2021), protecting "information received during the course of any audit or examination," and § 22.7(18), protecting communications made by a person outside government where disclosure might reasonably risk discouraging similar communications. Kirkwood sued, arguing that the Auditor's office failed to meet its burden to show that an exception applied to the ten withheld email chains and, further, that the Auditor's office failed to disclose an eleventh responsive email chain that had been quoted extensively in one reporter's blog.

Several months into the lawsuit, after Kirkwood had served discovery requests, the Auditor's office provided the eleventh email chain quoted in the blog post. Both parties moved for summary judgment. The Auditor's office provided the other ten email chains for the district court to review in camera (i.e., privately in chambers) to determine whether the asserted exceptions applied. The district court entered summary judgment in favor of the Auditor's office, holding that the ten email chains were exempt from production and that no violation occurred with the late turnover of the eleventh email chain. Kirkwood appeals.

## I.

In June 2021, the Auditor's office issued a report of a special investigation into Governor Kim Reynolds's role in a public awareness campaign to address COVID-19 called "Step Up, Stop the Spread." Kirkwood sought information about the special investigation and, on June 16, submitted an open records request to the Auditor's office under Iowa Code chapter 22. The time frame for the records

spanned January 2, 2019 (corresponding with Auditor of State Rob Sand's first day in office) to the present. Kirkwood requested the following:

- All emails sent to, sent from, or otherwise exchanged between any employee of the Auditor of State's office, including the Auditor, and the email address "desmoinesdem@bleedingheartland.com".

- All emails sent to, sent from, or otherwise exchanged between any employee of the Auditor of State's office, including the Auditor, that contain the phrase "desmoinesdem@bleedingheartland.com".

- All emails and text messages sent to, sent from, or otherwise exchanged between any employee of the Auditor of State's office, including the Auditor, that contain the word "Belin".

- All emails sent to, sent from, or otherwise exchanged between any employee of the Auditor of State's office, including the Auditor, and the email address "rjfoley@ap.org".

- All emails sent to, sent from, or otherwise exchanged between any employee of the Auditor of State's office, including the Auditor, that contain the phrase "rjfoley@ap.org".

- All emails and text messages sent to, sent from, or otherwise exchanged between any employee of the Auditor of State's office, including the Auditor, that contain the word "Foley".

The requests involving the "@bleedingheartland.com" email address and "Belin" are in reference to reporter Laura Belin, who maintains a blog called *Bleeding Heartland*. The requests involving the "@ap.org" email address and "Foley" are in reference to a reporter named Ryan Foley with the Associated Press.

Information technology staff within the Auditor's office promptly conducted electronic searches to gather documents responding to Kirkwood's requests. The Auditor's chief of staff, John McCormally, reviewed the documents containing the requested search terms and withheld production of any records he decided were covered by a statutory exception.

On July 6, the Auditor's office provided Kirkwood, at no cost, the first of two tranches of responsive records. McCormally informed Kirkwood in an accompanying letter about difficulties in retrieving records that predated May 30, 2019, because of a change in email systems around that time. The Auditor's office offered to retrieve and produce these earlier records upon payment of a fee, which Kirkwood agreed to pay.

On August 23, the Auditor's office provided the emails from January through May 2019. In an accompanying letter, McCormally stated that nine email threads were withheld as confidential under Iowa Code § 11.42(1) as "information received during the course of any audit or examination, including allegations of misconduct or noncompliance," and a tenth email thread was withheld as confidential under § 22.7(18) as communications not required by law from people outside government whose disclosure would discourage similar communications in the future.

Kirkwood was aware of an eleventh email not provided by the Auditor's office that, it argued, did not fall within the exceptions in § 11.42(1) or § 22.7(18). This email, which McCormally reportedly sent to Belin on June 4, 2021, was quoted in a *Bleeding Heartland* blog post by Belin shortly after. The email was reported to include statements from McCormally that defended the Auditor's office's report criticizing the Governor's "Step Up, Stop the Spread" campaign. The blog post included a lead-in sentence by Belin stating, "McCormally offered additional thoughts via email on June 4," followed by this excerpt from McCormally's email:

> "But Ostergren noted that 'Section 29C.6(10) says she can spend state resources to deal with the emergency,' which is what happened here."

> It's not what happened here. The full text [of] 29C.6(10) says:

> Utilize all available resources of the state government as reasonably necessary to cope with the disaster emergency.
>
> That doesn't mean the Governor can do whatever she wants. 29C must be narrowly construed. The statute does not give her absolute power. She can redirect money, she can suspend laws, but she still has to follow certain procedures when she does so. She has to say what she is doing and why she is doing it in a disaster proclamation. She didn't do that.
>
> Reading 29C.6(10) the way you suggest would nullify the rest of the 29C– if she can do whatever she chooses with any state "resource" when she declares an emergency, the rest of the statute is superfluous. It might as well say "When she declares an emergency, the Governor is the only law." That would amount to unconstitutional delegation of legislative power to the executive. Even in an emergency, she is still subject to the law.
>
> You may think a paid ad featuring her face was a reasonable thing for her to spend money on, or that this is too technical. Those are reasonable positions. However, there are rules for spending taxpayer money. And she didn't follow them. Making sure Is are dotted and Ts are crossed when it comes to the spending of taxpayer money is the entire job of the state Auditor.

Laura Belin, *A Failure to Communicate*, Bleeding Heartland (June 3, 2021), https://www.bleedingheartland.com/2021/06/03/a-failure-to-communicate [https://perma.cc/VH2R-MGGY].

On October 3, Kirkwood sued the Office of the Auditor of State, Auditor Sand, and McCormally (collectively, the "Auditor's office"), alleging violations of Iowa's open records laws. Kirkwood specifically alleged that the Auditor's office failed to produce the June 4 email chain between McCormally and Belin without a legal basis. The petition included a block quote of McCormally's email from the blog post. The Auditor's office denied any allegations of wrongdoing in its answer.

On January 18, 2022, the Auditor's office, in response to a request for production of documents in the lawsuit, provided Kirkwood with the McCormally-Belin email chain for the first time. The email showed that McCormally had used a private email account to send it. According to an affidavit

that McCormally submitted with the summary judgment motion, this fact explained why the email did not appear in the earlier search conducted on the Auditor's office's email system. The Auditor's office also provided two other emails exchanged between McCormally and Belin from McCormally's personal email account of a nonsubstantive nature that hadn't previously been turned over.

In its discovery responses, the Auditor's office again did not disclose the ten emails discussed earlier. For each email, it provided a summary that included the following information:

1. The date of the first and last email in the chain.

2. The personnel of the Auditor of State's office included in the email or email chain.

3. The subject matter of the chain.

4. The specific basis, described in narrative form with citation to legal authority, of the grounds to withhold the email or email chain.

5. A description of any inquiry made to any nongovernmental employee who sent or received information in the email or email chain as to whether such person would consent to the disclosure of the email or email chain.

6. Whether the email or email chain relates to an audit or examination conducted by the Office of the Auditor of State and, if so, the date the audit or examination was or will be completed.

Both parties moved for summary judgment. Kirkwood argued that the Auditor's office failed to show that it had properly withheld the email chains and thus Kirkwood was entitled to judgment in its favor. The Auditor's office argued that the ten withheld emails were confidential and not discoverable under Iowa Code § 11.42 and § 22.7(18), and thus Kirkwood's claims should be dismissed. The Auditor's office provided all ten email chains to the district court for an in camera review as it considered the motions.

The district court first considered the withheld email chain where the Auditor's office claimed protection under both § 11.42 and § 22.7(18). After reciting § 22.7(18), the district court stated its conclusion that "[h]aving reviewed the email *in-camera*, the Court concludes it is information which must be kept confidential within the meaning of section 22.7(18) and, therefore, was properly withheld." Turning to the nine withheld emails where the Auditor's office claimed § 11.42 applied, the court recited § 11.42 and again stated its conclusion: "After reviewing the emails in question, the Court finds the emails fall under the protection of section 11.42 as having been received during the course of an audit or examination" and thus "were properly maintained as confidential and withheld." The district court granted summary judgment in favor of the Auditor's office.

Kirkwood filed a motion to reconsider the ruling. It first requested that the district court address the McCormally-Belin email that the Auditor's office failed to provide in response to the open records request until the discovery phase of the lawsuit. Kirkwood also argued that the conclusory statements in the court's order did not explain how or why § 11.42 and § 22.7(18) actually applied to any of the ten withheld emails.

The district court's ruling on the motion to reconsider addressed both points. Regarding the eleventh email, the court stated:

> [Kirkwood] first requests the Court issue a ruling which holds the timing of [the Auditor's office]'s release of the eleventh email chain does not render [Kirkwood]'s claim moot. [The Auditor's office] established the email chain in question was initially not discovered due to its location in personal email correspondence. The Court finds no evidence establishing the delay was purposeful or the result of any improper motive on the part of [the Auditor's office], but was simply the result of the late discovery of the information.

As to Kirkwood's request for more details on the court's finding that § 22.7(18)

and § 11.42 applied, the court stated:

> [Kirkwood] additionally moves the Court to provide details as to why the material, reviewed in-camera, was determined to be covered by statutory privilege. Disclosure of details of the information, including the basis on which the Court's ruling was reached, beyond what was already revealed/explained by [the Auditor's office] in their discovery responses and in paragraph 17 of defendant McCormally's affidavit in support of defendant's motion for summary judgment . . . would necessarily involve discussion of confidential and privileged information. This would frustrate the purpose of the court's in-camera review. Consequently, the Court declines to go into the details of the information revealed by its in-camera review other than to state the Court's ruling is fully supported by the facts and applicable Iowa law.

The court denied the motion to reconsider. Kirkwood appeals.

## II.

Kirkwood contends that the district court erred in several ways. First, Kirkwood argues it established that the Auditor's office violated chapter 22 by failing to timely produce the McCormally-Belin email chain. Second, Kirkwood argues that the district court erred in applying § 11.42 and holding that the nine email threads between the Auditor's office and reporters constitute "information received during the course of any audit or examination" under the statute. And third, Kirkwood argues that the district court erred in applying § 22.7(18) to the tenth email chain.

## A.

Iowa's open records law, codified at Iowa Code chapter 22, is premised on the notion that "free and open examination of public records is generally in the public interest even though such examination may cause inconvenience or embarrassment to public officials or others." Iowa Code § 22.8(3). "Every person shall have the right to examine and copy a public record." *Id.* § 22.2(1). A "public record" is defined to "include[] all records, documents, tape, or other information, stored or preserved in any medium, of or belonging to this state." *Id.* § 22.1(3)(*a*).

The statute contains a long list of exceptions protecting specific categories of records from disclosure. *See id.* § 22.7.

Section 22.10(1) authorizes an aggrieved person to pursue judicial enforcement of the statute's requirements through an action against the public records' lawful custodian. The statute describes the judicial enforcement process as follows:

> Once a party seeking judicial enforcement of this chapter demonstrates to the court that the defendant is subject to the requirements of this chapter, that the records in question are government records, and that the defendant refused to make those government records available for examination and copying by the plaintiff, the burden of going forward shall be on the defendant to demonstrate compliance with the requirements of this chapter.

*Id.* § 22.10(2).

Kirkwood argues that the district court erred in concluding that no open records violation occurred because the failure to produce the McCormally-Belin email was not "purposeful" or the "result of any improper motive." Kirkwood argues that although a knowing violation results in a greater penalty, monetary penalties are nonetheless required for unintentional violations as well and that the Auditor's office never claimed below that its late production was unintentional. The Auditor's office, for its part, argues that producing the McCormally-Belin email mooted any cause of action concerning it and that Kirkwood is attempting to shift its claim from alleging insufficiency to alleging delay. The parties agree that we review the district court's summary judgment ruling for correction of errors at law. *Rieder v. Segal,* 959 N.W.2d 423, 425 (Iowa 2021).

Our recent opinion in *Belin v. Reynolds*—issued after the district court's ruling in this case—guides several of the open records questions presented here. 989 N.W.2d 166, 169 (Iowa 2023). In that case, Laura Belin and several other reporters and news organizations sued the Governor's office, Governor Kim

Reynolds, and members of the Governor's staff for failing to timely produce records in response to multiple open records requests. *Id.* at 169–70. The defendants moved to dismiss the case, asserting (among other defenses) that the plaintiffs' claims were moot because the defendants had turned over the requested documents shortly after the lawsuit was filed. *Id.* at 170.

We said that "where (as here) it is clear that the plaintiffs have sought government records from defendants who are subject to the requirements of chapter 22, the only question is whether the defendants 'refused to make those government records available.' " *Id.* at 176–77 (quoting Iowa Code § 22.10(2)). We interpreted the statutory language to state "that a defendant may 'refuse' either by (1) stating that it won't produce records, or (2) showing that it won't produce records." *Id.* at 174. A refusal of the second type, we observed, could be demonstrated "through an unreasonable delay in producing records." *Id.* On this point, we recited our earlier observation that,

> [a]lthough section 22.10(2) speaks in terms of a refusal rather than a delay in production, we think a refusal to produce encompasses the situation where, as here, a substantial amount of time has elapsed since the records were requested and the records have not been produced at the time the requesting party files suit under the Act.

*Id.* (alteration in original) (quoting *Horsfield Materials, Inc. v. City of Dyersville*, 834 N.W.2d 444, 463 n.6 (Iowa 2013)). Although "[g]ood-faith, reasonable delay" in producing a public record is not a violation, Iowa Code § 22.8(4), "[e]xtensive delay may—on its own—establish an implicit refusal," *Belin*, 989 N.W.2d at 175. We listed additional facts that bear on whether a defendant's conduct constitutes a refusal to produce records, including:

> (1) how promptly the defendant acknowledged the plaintiff's requests and follow-up inquiries, (2) whether the defendant assured the plaintiff of the defendant's intent to provide the requested records, (3) whether the defendant explained why requested records

weren't immediately available (e.g., what searches needed to be performed or what other obstacles needed to be overcome), (4) whether the defendant produced records as they became available (sometimes called "rolling production"), (5) whether the defendant updated the plaintiff on efforts to obtain and produce records, and (6) whether the defendant provided information about when records could be expected.

*Id.*

The Auditor's office reads *Belin* to specify two types of chapter 22 claims that an aggrieved person may bring: (1) insufficiency claims and (2) delay claims. It argues that Kirkwood's petition raised only an insufficiency claim and that when the Auditor's office eventually produced the McCormally-Belin email, Kirkwood's insufficiency claim then became moot. It notes that Kirkwood never amended its petition to raise a delay claim, even after receiving the McCormally-Belin email, and thus argues that Kirkwood can't pursue a delay claim on appeal. Kirkwood, in response, argues that the text of § 22.10 simply specifies a cause of action for "refusal" to produce records and that *Belin* didn't carve chapter 22 claims into two categories for pleading purposes.

Kirkwood offers the correct reading. In *Belin*, we described insufficiency and delay as merely two ways that a custodian could demonstrate a refusal to produce documents under chapter 22. *Id.* at 171–74. The statute doesn't set up distinct causes of action for these two methods. *See* Iowa Code § 22.10. Further, the statute imposes no requirement that a plaintiff plead a particular method of refusal with specificity. *Id.* Under Iowa's liberal notice pleading standards, Kirkwood sufficiently alleged a claim for refusing to produce records under chapter 22. It was under no obligation to plead, or amend its petition to plead, a claim specifying refusal by delay.

To the extent that the McCormally-Belin email has already been produced, Kirkwood's request to compel turnover of a produced record is indeed moot since

an order to produce documents that were already provided would have no practical importance or effect. *Belin*, 989 N.W.2d at 171. Although we may address a moot question "where matters of public importance are presented and the problem is likely to recur," neither exception to the mootness doctrine applies to the production of this email. *Id.* (quoting *Homan v. Branstad*, 864 N.W.2d 321, 330 (Iowa 2015)).

But Kirkwood's claim doesn't merely seek to compel turnover of records. Kirkwood recites our statement in *Belin* that "[a]lthough mootness prevents the issuance of a court order to produce the already-produced records, mootness would not bar any other relief that may be available under the Act, e.g., attorney fees incurred in filing suit to compel production." *Id.* (emphasis omitted). Kirkwood's pursuit of a civil penalty, attorney fees, and court costs under chapter 22 based on a refusal to timely produce the McCormally-Belin email chain is not moot. *See id.*

We turn to whether the failure to timely produce the email constitutes a violation of the statute. The Auditor's office argues that we should affirm the district court ruling finding no violation because any delay in producing the email was reasonable. *See id.* at 174 (discussing "an implied or 'silent' refusal" that can be proved "through an unreasonable delay in producing records"). It argues that Kirkwood's claim is like the one we rejected in *Klein v. Iowa Public Information Board*, where we held in part that the plaintiff "lacked standing to seek judicial review with respect to records that were already publicly available." 968 N.W.2d 220, 235 (Iowa 2021). Kirkwood can't prove a refusal to produce the email under chapter 22, the Auditor's office argues, because the email's contents were already publicly available on the *Bleeding Heartland* blog, as recognized in Kirkwood's own petition quoting it.

We believe that there is a factual issue question whether the delay in producing the McCormally-Belin email was reasonable. To begin with, Kirkwood could not know whether the blog post reflected the full, accurate contents of the email. Unlike in *Klein*, the actual record in this case had not been produced. *See id.* The Auditor's office, in its answer to Kirkwood's petition, refers to the portion posted on the blog as "excerpted." Kirkwood was entitled to see the actual, complete record. *See* Iowa Code § 22.2 (providing that "[e]very person shall have the right to examine and copy a public record" and that "[a]ll rights under this section are in addition to the right to obtain a certified copy of a public record").

The Auditor's office recites the lengthy response delays that we held violated chapter 22 in *Belin* to argue the reasonableness of the delay in producing the McCormally-Belin email here. Iowa Code § 22.8(4) provides that a "[g]ood-faith, reasonable delay by a lawful custodian in permitting the examination and copying of a government record is not a violation" of chapter 22. The Auditor's office notes that in *Belin*, the records requests went without a response for months—one went for eighteen months—before the custodian produced the records. *See Belin*, 989 N.W.2d at 167. The Auditor's office points out that, in this case, it immediately began working on Kirkwood's request, explained its efforts to locate all responsive emails, updated Kirkwood on the status of the request, and provided a rolling production of documents.

These facts weigh in favor of the Auditor's office, but they do not explain the delay in producing the McCormally-Belin email. The Auditor's office never produced it with the initial open records request. Kirkwood put the Auditor's office on notice of the failure to produce this email when Kirkwood filed its petition by specifically identifying the email as improperly withheld. Kirkwood even pasted into the body of its petition a screenshot of the *Bleeding Heartland* blog post. This, Kirkwood argues, should have triggered prompt action to turn over

the email or to explain the legal basis for withholding it. Yet the Auditor's office still didn't produce the email until it responded to Kirkwood's discovery requests in the lawsuit—106 days after Kirkwood filed its petition and 216 days after the open records request.

Kirkwood presented enough evidence to permit a factfinder to conclude that, as to this email, the Auditor's office's delay was unreasonable. Once a plaintiff establishes a prima facie case, "the burden of going forward [is] on the defendant to demonstrate compliance with the requirements of [chapter 22]." Iowa Code § 22.10(2). "[W]hether a party's conduct is reasonable," we have said, "is usually a fact question." *Knake v. King*, 492 N.W.2d 416, 417 (Iowa 1992) (per curiam). We conclude that an issue of fact exists as to whether the Auditor's office unreasonably delayed in providing the McCormally-Belin email and thus failed to comply with chapter 22. We reverse the district court's summary judgment ruling in favor of the Auditor's office concerning this email and remand for further proceedings.

B.

We turn to the part of the ruling granting summary judgment on the Auditor's office's withholding of the nine emails under Iowa Code § 11.42.

First, some background about the statutory powers and obligations of the Auditor of State. Chapter 11 of the Iowa Code provides that "[t]he auditor of state shall annually, and more often if deemed necessary, audit the state and all state officers and departments receiving or expending state funds." *Id.* § 11.2(1). The law grants the Auditor "broad access to all information when conducting an audit," including "all information, records, instrumentalities, and properties used in the performance of the audited or examined entities' statutory duties or contractual responsibilities . . . [and] full access to all papers, books, records, and

documents of any officers or employees." *Sand v. Doe*, 959 N.W.2d 99, 106 (Iowa 2021) (quoting Iowa Code § 11.41(1)–(2)).

Chapter 11 also imposes obligations on the Auditor to maintain the confidentiality of records used in performing its duties, stating:

> If the information, records, instrumentalities, and properties sought by the auditor of state are required by law to be kept confidential, the auditor of state shall have access to the information, records, instrumentalities, and properties, but shall maintain the confidentiality of all such information and is subject to the same penalties as the lawful custodian of the information for dissemination of the information.

Iowa Code § 11.41(3).

The Auditor's office sought to withhold nine emails under § 11.42(1), which provides: "Notwithstanding chapter 22, information received during the course of any audit or examination, including allegations of misconduct or noncompliance, and all audit or examination work papers shall be maintained as confidential." Kirkwood argues that the Auditor's office's communications with reporters Belin and Foley do not constitute "information received during the course of any audit or examination" and thus were improperly withheld. The Auditor's office responds by highlighting the ensuing text that states such information includes "allegations of misconduct or noncompliance," and it asserts that communications with reporters about allegations of misconduct or noncompliance unquestionably fits within the statute.

Whether an email was properly withheld as "information received during the course of any audit or examination" first requires a legal determination about what constitutes an audit or examination, followed by a factual determination about whether a document pertains to and was received during the course of it. *Id.* Although the Code does not define "audit," in *Sand v. Doe*, we described an audit "as 'a snapshot of a client's financial condition at a given time.'"

959 N.W.2d at 106–07 (quoting *Eldred v. McGladrey, Hendrickson & Pullen*, 468 N.W.2d 218, 220–21 (Iowa 1991)). *Black's Law Dictionary* defines "audit" as "[a] formal examination of an individual's or organization's accounting records, financial situation, or compliance with some other set of standards." *Audit*, *Black's Law Dictionary* 161 (11th ed. 2019). The Code does define an "examination" under chapter 11 as meaning "procedures that are less in scope than an audit but which are directed toward reviewing financial activities and compliance with legal requirements." Iowa Code § 11.1(*b*).

In *Sand*, we held that an initial email request for information from the Auditor to a state agency did not constitute an audit for purposes of § 11.42 and thus was not subject to the statute's confidentiality protections. 959 N.W.2d at 109. We noted that "[t]he initial emails were casual ('Please call me Rob') and could be construed as requests for follow-up information from [a] meeting rather than formal demands for documents as part of an audit." *Id.* But while we stated that "[a]udits generally require specific objectives and identified standards against which the objectives are measured," this "does not mean the auditor of state is necessarily required to provide a formal engagement letter identifying those objectives and standards to initiate an audit." *Id.*

For each of the withheld emails, the Auditor's office provided a short summary of the email's contents and the basis for withholding. Here's one example:

1. 4.7.21

2. email thread between Laura Belin and Sonya Heitshusen

3. Includes info Belin's research into CRF expenditures.

4. This email constitutes "Information received in the course of an audit["] under 11.42.

5. N/A

6. This information relates to an ongoing audit of federal expenditures. Audit reports issued in November 2021 and June 2021, may or may not have utilized this information and/or some of the information therein may have been disclosed pursuant to Iowa Code 11.28 and 11.42 (3). Subsequent reports referencing this information may be issued as deemed necessary.

The district court's ruling did not separately address each email and thus did not identify what it was about each email that it found satisfied the requirements of § 11.42. In its ruling on Kirkwood's motion for reconsideration, the district court stated that providing details for its ruling "would necessarily involve discussion of confidential and privileged information" and thus "would frustrate the purpose of the court's in-camera review." As a result, the district court "decline[d] to go into the details of the information revealed by its in-camera review other than to state the Court's ruling is fully supported by the facts and applicable Iowa law."

We are not persuaded that each of these emails, as a matter of law, is covered by § 11.42. For example, some are in the form of a request for information from the reporter to the Auditor's office. Under these circumstances, where the connection between the email and an actual audit or examination is not immediately apparent, summary judgment should be reversed. On remand, the Auditor's office should present evidence for each email to establish that the specific email was actually received in the course of an audit or examination, such as the specific audit or examination to which it relates, a copy of any audit report, and the start and end dates of the audit or examination.

C.

The Auditor's office withheld the tenth email under Iowa Code § 22.7(18). This statute requires that a government body keep a public record confidential if the record constitutes

> [c]ommunications not required by law, rule, procedure, or contract that are made to a government body or to any of its employees by identified persons outside of government, to the extent that the government body receiving those communications from such persons outside of government could reasonably believe that those persons would be discouraged from making them to that government body if they were available for general public examination.

Iowa Code § 22.7(18).

This exception is itself subject to several exceptions. *See id.* § 22.7(18)(*a*)–(*c*). Reciting these exceptions, Kirkwood argues that the Auditor's office did not explain why disclosure would discourage the public from providing information, did not indicate whether it had sought consent from the member of the public to disclose the communication, and failed to show that the release of the information would jeopardize a person or a continuing investigation.

In *Ripperger v. Iowa Public Information Board*, we observed that § 22.7(18) permitted public bodies to keep certain categories of useful information confidential when the record custodian could reasonably believe that members of the public otherwise might not provide the information if they knew it might be publicly disclosed. 967 N.W.2d 540, 552–53 (Iowa 2021). "This is an objective test, from the perspective of the record custodian, not the [Iowa Public Information] Board or district court." *Id.* at 553. We believe that one of those categories reasonably includes information from tipsters or whistleblowers about "illegal or unbusinesslike practices" that the Auditor's officer is required to investigate. Iowa Code § 11.4(1)(*c*). Chapter 22 imposes no duty on government bodies to affirmatively contact every person who has submitted a record subject to this statute to obtain consent for disclosure. In *Ripperger*, for instance, the requestor sought records about thousands of people who asked to remove themselves from a county assessor's online property search database. 967 N.W.2d at 544. We didn't require the assessor to prove that it had contacted each person to show

compliance with the statute. *Id.* at 551–54. We likewise find no such duty applied here.

The district court, after reviewing the email, held that it fell within the exception created in § 22.7(18) and that none of the exceptions to the exception applied. Based on our review of the email, we find no error in the district court's conclusion. We note that this email is not connected to the two investigative reporters and was sent by a member of the public. The email is (1) not required by law and (2) made to a government body (3) by someone outside government, and (4) the Auditor's office could reasonably believe that the sender would be discouraged from making such communications if the Auditor's office publicly disclosed it. *See id.* § 22.7(18). We thus affirm the ruling granting summary judgment in the Auditor's office's favor on the tenth email withheld under § 22.7(18).

## III.

We reverse the district court's granting of summary judgment in favor of the Auditor's office on the McCormally-Belin email and the withholding of the nine emails under § 11.42, affirm the district court's granting of summary judgment on the Auditor's office's withholding of the tenth email under § 22.7(18), and remand for further proceedings.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**